FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 OCT 31 PM 4:26

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

DENNIS DELIA,

Plaintiff,

v.

DITECH FINANCIAL LLC, AND
JAMES E. ALBERTELLI, P.A.,

Defendants,

______________________________/

Case #: ~~2016~~
6:16-cv-1901-ORL-31-DCI

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, DENNIS DELIA (hereafter "DELIA"), an individual, files this Complaint for Damages and Incidental Relief against Defendant(s), DITECH FINANCIAL LLC. (hereafter "DITECH"), a Foreign for profit Corporation, and JAMES E. ALBERTELLI, P.A. (hereafter "ALBERTELLI"), a Florida for profit Corporation, and alleges:

## I.
## PRELIMINARY STATEMENT

1. This is an action brought for violations of 15 U.S.C. § 1692, *et seq.*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices in connection with collecting consumer debts; for violation of 12 U.S.C. §2601, *et sequi,* known more commonly as the "Real Es-

tate Settlement Procedures Act" ("RESPA"); for Declaratory Relief pursuant to 28 U.S.C. § 2201; and for pendent state law claims for violations of Florida Statute §559.55, *et seq.*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA").

## II.
## JURISDICTION & VENUE

2. The jurisdiction of this Court arises under 15 U.S.C. § 1692k, 12 U.S.C. §§2605(f), 28 U.S. Code § 2201, 28 U.S.C. § 1331, and for pendant state law claims under 28 U.S.C. § 1367.

3. DITECH transacts business in the State of Florida. The conduct complained of which gives rise to the causes of action occurred in the County of Orange. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts DITECH perpetrated therein upon DELIA.

4. ALBERTELLI transacts business in the State of Florida. The conduct complained of which gives rise to the causes of action occurred in the County of Orange. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts ALBERTELLI perpetrated therein upon DELIA.

## III.
## STANDING

5. DELIA has suffered injuries in fact that are traceable to the conduct of DITECH and ALBERTELLI and that are likely to be redressed by a favorable decision in this matter. Specifically, DELIA suffered a concrete informational injury as a result of DITECH'S failure to provide truthful and accurate information in connection with its attempt to collect an alleged debt from DELIA. Defendants trespassed upon DELIA's right to quiet possession of his mortgaged

real property as a result of DITECH and ALBERTELLI's wrongful attempts to collect a deby by foreclosure and their continued prosecution of a foreclosure action without probable cause and with intent to unlawfully deprive DELIA of his real property. DELIA suffered a concrete informational and monetary injury as a result of DITECH's failure to investigate, correct and provide written notice of DITECH's correction of accounting errors associated with DELIA's mortgage loan account.

## IV.
## COMPOSIT EXHIBITS

6. Attached to this Complaint are Composite Exhibits. The Composite Exhibits are incorporated and made a part hereof as Composite Exhibit "A" and are given Bates numbers on the bottom of each page. Any reference made to Composite Exhibit "A" shall be as follows: **"Composite Exhibit "A" page ___"**

## V.
## ALLEGATIONS AS TO PARTIES

7. At all times material hereto, DELIA was *sui juris* and a resident of Orlando, Orange County, Florida, in the United States of America, residing at 2400 Chelsea Street, Orlando, Florida 32803.

8. At all times material hereto, DITECH is a State of Florida registered foreign limited liability company engaged in the primary business of servicing over 2.1 million mortgage loans. DITECH's principal place of business is located at 3000 Bayport Drive, Suite 880, Tampa, FL 33607. (Composite Exhibit A, pages 199 - 201) DITECH was previously known as Green Tree Servicing, LLC, and first became registered in the State of Florida on June 11, 2003. (Composite Exhibit A, pages 199 - 201) Green Tree Servicing, LLC, was formed as an LLC in

the State of Delaware on December 5, 1994. (Composite Exhibit A, page 205) On August 31, 2015, Green Tree Servicing, LLC, changed its name to Ditech Financial LLC. (Composite Exhibit A, pages 208 - 213) An exhaustive internet search shows Green Tree Servicing, LLC appears to have never filed bankruptcy. On October 25, 2016, attorney George Gingo spoke to a Ditech representative by the name of Dustin, employee ID number 9DB. Attorney Gingo asked Dustin if Ditech was in bankruptcy. Dustin responded that Ditech had never been in bankruptcy. This complaint does not seek any damages or any other remedy against GMAC Mortgage Corp. (hereafter "GMAC") or any of its related entities.

9. At all times material hereto, ALBERTELLI, also known by the registered fictitious name of "Albertelli Law" is a Florida Profit Corporation with a principal place of business located at 208 N. Laura Street, Suite 900, Jacksonville, FL 32202.

10. Defendant DITECH and Defendant ALBERTELLI, collectively are referred to as "Defendants."

## VI.
## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11. DELIA has complied with all conditions precedent to the filing of this action or the conditions precedent have been waived or excused.

12. On June 10, 2005, DELIA, as a consumer, executed and delivered a promissory note in favor of USAA Federal Savings Bank and a mortgage in favor of Mortgage Electronic Registration Systems as assignee for USAA Federal Savings Bank, securing repayment of the promissory note (the "Mortgage Loan"). This Mortgage Loan is the debt that is the subject of this action. Under the terms of the Mortgage Loan, DELIA was required to repay $221,600.00,

payable in monthly installments of $1,310.85, to USAA Federal Savings Bank (hereafter "USAA"), or its assignee, beginning August 1, 2005 through July 1, 2035. (Composite Exhibit A, pages 4 - 19 (Mortgage) and pages 20 - 22 (Note)).

13. The purported obligation to pay money under the note and mortgage arose in connection with the purchase of DELIA'S personal family residence located at 2400 Chelsea Street, Orlando, Florida 32803-2124, with following legal description: Lot 13, Block E, Phillips First Replat of Lakewood, according to the Plat Thereof as Recorded in Plat Book R, Page 105, Public Records of Orange County, Florida (the "Delia Residence").

14. The DELIA Residence was at all times used by DELIA for personal, family and household purposes (i.e. DELIA lived at the Delia Residence as his homestead residence).

15. Beginning on or around June 10, 2005 through approximately February 8, 2012, DELIA received periodic statements bearing the USAA logo, directing DELIA to pay his monthly mortgage payments to USAA, and directing all inquiries and correspondence to USAA.

16. Because DELIA banked with USAA, he frequently paid his mortgage payments by phone transfer from his USAA banking account(s) directly to his USAA mortgage account, without incident.

17. On or about October 12, 2005, DELIA received correspondence bearing the USAA logo, informing DELIA that USAA misapplied DELIA's September 2005 payment to his Mortgage Loan account on September 29, 2005, and that the error was corrected and all negative consequences of the misapplication had been reversed, waived or corrected. (Composite Exhibit

A, page 25). DELIA did not have any other payment application difficulties until approximately April 1, 2006.

18. On April 10, 2006, DELIA received a periodic Mortgage Loan statement acknowledging receipt of his March 2006 payment on April 10, 2006, and advising that the account was due for payment in the amount of $2,945.04, which included the past due April 1, 2006 payment. (Composite Exhibit A, page 26). The April 2006 statement acknowledged receipt of $4,315.05 in interest payments for 2006, which was equal to the approximate interest-only portion for four periodic payments (approximately $1075.00/month), suggesting that DELIA had already paid all contractual payments due through April, 2006.

19. DELIA paid his monthly mortgage payments by phone for the payments due March, April, May, June and July, 2006, and was current on his Mortgage Loan as of July 28, 2006. (Composite Exhibit A, pages 26 - 35 (Monthly Statements)).

20. On July 28, 2006, DELIA received a letter bearing USAA letterhead, stating that USAA reversed DELIA's Mortgage Loan payments because his payment was "returned unpaid" by USAA. The letter stated the Mortgage Loan was due for the May 1, 2006 payment. (Composite Exhibit A, page 36). DELIA's USAA bank statement for the relevant period shows no refund for the reversed payments that allegedly occurred on July 28, 2006, for payments DELIA paid from his USAA account to his Mortgage Loan on April 10, 2006, May 9, 2006, and June 19, 2006. (Composite Exhibit A, page 37 (USAA Bank Statement redacted)). Delia had made his payments, but USAA had made another error and mistakenly reversed the payments but did not refund those monies to Delia.

21. As of July 18, 2006, DELIA's Mortgage Loan account statement reflected year to date interest paid in the amount of $7,539.33, the full seven months of contractual interest due for 2006. (Composite Exhibit A, page 30). The chart below (Chart 1) demonstrates the payment history derived almost exclusively from the Mortgage Loan account statements during the relevant period.

**Chart 1**

| Statement Date | Payment Due | Recent Payments | YTD Interest Pd | Info Source (Comp. Ex. A, Pg __)_ |
|---|---|---|---|---|
| 4/10/2006 | $2945.04 | Rec'd: 4/10/2006<br>Amount: $1374.00<br>Applied: 3/1/2006 | $4,315.05 | Pg. 26<br>Apr 2006 statement |
| 5/9/2006 | $1446.12 | Rec'd: 5/9/2006<br>Amount: $3010.58<br>Applied: 4/1/2006<br>5/1/2006 | $6465.72 | Pg 28<br>May 2006 statement |
| 6/19/2006<br><br>6/20/2006 | $1462.12 | Rec'd: 6/19/2006<br>Amount: $1,511.66<br>Applied: 6/1/2006<br><br>Rec'd: 6/19/2006<br>Amount: $1511.66 | $7539.33 | Pg. 30<br>Jun 2006 statement<br><br>Pg 32<br>USAA letter ack pmt |
| 7/18/2006 | $2973.78 | None | $7539.33 | Pg ____<br>Jul 2006 statement |
| 8/18/2006 | $7,576.56 | Rec'd: 7/28/2006<br>Amount: $1511.66<br>Applied: 4/1/2006<br><br>Revs'd: 7/28/2006<br>Amt: ($1439.75)<br>Applied: 3/1/2006<br>Amt: ($1570.83)<br>Applied: 4/1/2006<br>Amt: ($1446.12)<br>Applied: 5/1/2006 | $5,390.96 | Pg 33<br>Aug 2006 statement |

22. As of August 15, 2006, DELIA's Mortgage Loan account transaction history and DELIA'S bank statements reflected life of loan payments in the sum of $22,834.21, before the unexplained payment reversal on July 28, 2006. After subtracting the unexplained reversed payments, DELIA still paid $18,311.97 in contractual mortgage payments. As of August 15, 2006, DELIA's Mortgage Loan had come due for eighteen payments. ***Without including the reversed payments***, DELIA paid an average monthly payment of $1,408.61 for the first eighteen months of his contractual loan period, leaving him less than one full payment short as of August 1, 2006. The chart below (Chart 2) demonstrates the payment history derived almost exclusively from the Mortgage Loan transaction history and from DELIA'S bank statements during the relevant period.

**Chart 2**

| Payment Date | Payment Amount | Data Source | Due Date Applied (as reflected in the transaction history) |
|---|---|---|---|
| 8/6/2005 | 1439.75 | USAA statement 8/16/2005 | 8/1/2005 |
| 10/12/2005 | 1439.75 | Transaction History | 9/1/2005 |
| 10/12/2005 | 1505.29 | Transaction History | 10/1/2005 |
| 11/21/2005 | 1439.75 | USAA statement 12/16/2005 | 11/1/2005 |
| 1/5/2006 | 1521.50 | USAA statement 1/17/2006 | 12/1/2005 |
| 2/27/2006 | 3153.66 | USAA statement 3/16/2006 | 1/1/2006<br>2/1/2006 |
| 4/11/2006 | 1390.00 | USAA statement 4/17/2006 | 3/1/2006 |
| 5/9/2006 | 1439.75 | Transaction History | 4/1/2006 (R)* |
| 5/9/2006 | 1570.83 | Transaction History | 5/1/2006 (R)* |
| 6/19/2006 | 1446.12 | Transaction History | 6/1/2006 (R)* |

| | | | |
|---|---|---|---|
| 6/20/2006 | 1511.66 | USAA statement 7/17/2006 | ?? unapplied until 7/28/06; applied to 4/1/2006* |
| 6/20/2006 | 1677.25 | USAA statement 7/17/2006 | ?? unapplied but deducted from DELIA'S bank account |
| 7/28/2006 | 1511.66* | Transaction History | 4/1/2006 |
| 7/28/2006 | (4522.24) Reversal | Transaction History | 3/1/2006<br>4/1/2006<br>5/1/2006 |
| 8/15/2006 | 3278.90 | USAA statement 8/16/2006 | ?? |
| 10/16/2006 | 4974.15 ?? | USAA statement 10/16/2006 | ?? |

23. On or about July 28, 2006, DELIA received a notice of default on USAA letterhead, alleging DELIA was in default for failure to pay the May 1, 2006 installment payment for his Mortgage Loan. To cure the default, DELIA was required to pay $4,603.78 within thirty (30) days from the date of the letter. (Composite Exhibit A, pages 38 - 39).

24. DELIA began suffering anxiety, loss of appetite, and loss of sleep when he learned that his Mortgage Loan payments were not being properly applied and that some had been reversed. He worried about how he was going to cure the alleged default because the payments he'd made had already been withdrawn from his checking account, and those that were credited 30-90 days later were never refunded to his bank account.

25. On October 13, 2006, GMAC, through its counsel David J. Stern, sued DELIA to foreclosure the mortgage encumbering his primary residence in Orange County case number 2006-CA-8644-O (hereafter "Foreclosure Action"). (Composite Exhibit A, Pages 1 - 22). GMAC alleged that GMAC was the servicer of DELIA's Mortgage Loan, and designated holder of the note and mortgage, acting on behalf of the owner with authority to bring the foreclosure action (Composite Exhibit A, page 1, para. 5).

26. GMAC, through its counsel David J. Stern, filed a Lis Pendens which clouded title to the Subject Property. (Composite Exhibit A, pages 23 - 24).

27. GMAC, through its counsel, alleged in the foreclosure complaint that DELIA defaulted on his May 1, 2006 installment payment (Exhibit A, Page 1, para. 7), and GMAC accelerated the entire mortgage loan debt (Composite Exhibit A, page 1, para. 9).

28. DELIA'S anxiety and distress levels worsened substantially when he was served the foreclosure complaint because he'd notified USAA, who DELIA believed was his Mortgage Loan servicer, about the accounting errors but USAA failed to correct the errors. Upon information and belief, and unbeknownst to Delia, he was speaking with GMAC agents and employees about his Mortgage Loan each time he called the USAA phone numbers listed on his periodic statements.

29. On or about October 25, 2006, DELIA liquidated part of his IRA account and suffered penalties in excess of $7,000.00, in an effort to cure his alleged Mortgage Loan default, even though he did not believe he was in default. Neither GMAC, USAA, nor David J. Stern's office was willing or able to give DELIA a reinstatement figure, nor was either willing to acknowledge DELIA'S actual account status, despite having direct knowledge that DELIA's payments had been reversed on paper but that no funds were ever returned to his account for the untimely reversals. DELIA was ultimately forced to use the funds to retain foreclosure defense counsel.

30. On April 22, 2009, GMAC, through its counsel David J. Stern, caused to be filed in the Official Records of Orange County, Florida, a false assignment of mortgage that purported

to transfer the mortgage and the note from MERS to GMAC. (Composite Exhibit A, pages 40 - 41). The assignment was executed on March 26, 2009 and it was fraudulently back-dated to August 31, 2006 in order to give the false appearance of standing. See *Kenney v. HSBC Bank, U.S.*, 175 So.3d 377 (Fla. 4th DCA, 2015).

31. David J. Stern was subsequently disbarred for creating and recording false assignments of mortgage. See *The Florida Bar v. Stern*, 133 So.3d 529 (Fla. 2014); *Eagles Master Ass'n v. Bank of Am., N.A.*, 40 Fla. L. Weekly D1510, D1510 (Fla. 2d DCA June 26, 2015).

32. On October 14, 2010, DELIA filed his answer and affirmative defenses in the Foreclosure Action. (Composite Exhibit A, pages 42 - 80). DELIA alleged payment and he provided proof of the payments. DELIA also alleged the failure of a condition precedent in that ***GMAC*** failed to provide the notice of default to him. (Composite Exhibit A, page 48, para. 21). To support this defense, he attached to his affirmative defenses the notice of default from ***USAA***. (Composite Exhibit A, pages 70 - 71).

33. On February 8, 2012, DELIA received correspondence from USAA advising DELIA that USAA sold the servicing rights for his Mortgage Loan to GMAC when the loan closed on June 10, 2005. (Composite Exhibit A, page 81). Despite all correspondence, including billing statements bearing the USAA logo and USAA contact information, USAA did not service his Mortgage Loan and all of the communications and statements concerning his Mortgage Loan originated from GMAC on the letterhead of USAA. USAA advised DELIA that GMAC would

send all future loan communications in its own name to prevent confusion. (Composite Exhibit A, page 81 - 83).

34. On March 1, 2012, GMAC sent a letter to DELIA stating that GMAC had been servicing the mortgage loan from its inception. (Composite Exhibit A, page 84 - 87)

35. On October 22, 2012, GMAC filed a suggestion of bankruptcy in the foreclosure action. (Composite Exhibit A, pages 88 - 92). However, GMAC Mortgage Corp. was not listed as a debtor in the consolidated case. GMAC Mortgage Corp. was in fact an unsecured creditor who filed a proof of claim in the amount of $3,150,000.00, in the bankruptcy case of Residential Capital, LLC, and several subsidiary corporations, including GMAC Mortgage, LLC as well as Ditech, LLC. (collectively, the "Debtors") Green Tree Servicing, LLC and Ditech Financial, LLC appear to not have been debtors in the bankruptcy case.

36. On January 23, 2013, GMAC notified DELIA that Green Tree Servicing LLC purchased the servicing rights for his Mortgage Loan. (Composite Exhibit A, pages 93 - 96) Green Tree Servicing, LLC, later changed its name to Ditech Financial LLC. In this complaint, Green Tree Servicing, LLC is referred to as Defendant DITECH.

37. According to DITECH'S website, https://www.ditech.com/manage-my-account/new-to-ditech/transferred/gmac/, which was accessed by DELIA's counsel on August 8, 2016, Green Tree Servicing purchased the GMAC mortgage loans in January 2010, long after GMAC forced DELIA into payment default.

38. On February 15, 2013, DITECH (in the name of "Green Tree Servicing") notified DELIA that Green Tree Servicing was the new servicer of the mortgage loan, had the right to collect loan payments from DELIA. (Composite Exhibit A, page 97 - 100).

39. When DITECH became the mortgage loan servicer, it received GMAC'S Mortgage Loan servicing records. Those records revealed that DELIA had paid his Mortgage Loan payments and was not in default when GMAC, disguised as USAA, reversed his payments and threw him into technical default. GMAC'S servicing records revealed that GMAC did not remit the reversed funds to DELIA'S checking account.

40. On September 12, 2013, ALBERTELLI entered its appearance as counsel for DITECH by filing an "Agreed Motion to Continue Trial Set for September 13, 2013" in the Foreclosure Action. (Exhibit A, pages 101 - 102). This was DITECH'S first paper filing and was ALBERTELLI's appearance under Florida Rules of Judicial Administration 2.505(e).

41. When ALBERTELLI became DITECH'S counsel in the Foreclosure Action, ALBERTELLI reviewed the court filings and DITECH'S servicing records and ALBERTELLI learned that GMAC's allegations in the foreclosure complaint were false, and that in fact: 1) GMAC did not possess the Note when the action was filed; 2) DITECH did not currently possess the Note; 3) there was no proof of ownership of the Note by any person; 4) GMAC was not authorized by the owner of the Note to bring the action; 5) DITECH was not authorized by the owner of the Note to bring the action; 6) GMAC did not acquire the mortgage; 7) DITECH did not acquire the mortgage; and, 8) notice of default was never provided as required by paragraph 22 of the mortgage; and, 9) DELIA was not in default on May 1, 2006.

42. Even though DITECH and ALBERTELLI knew DELIA was not in default when GMAC filed the Foreclosure Action and that the allegations contained in the foreclosure complaint were false, the Defendants elected to continue prosecuting the Foreclosure Action and proceeded to trial on December 10, 2013.

43. To defeat DELIA's affirmative defense regarding notice of breach, Defendants DITECH and ALBERTELLI conspired to intentionally redact the top part of the notice of default to remove the heading which indicated it was from USAA and then introduced the fraudulent notice of default into evidence as Exhibit 3. (Composite Exhibit A, page 103 - 105)

44. At the foreclosure trial, Attorney Kali E. Campbell, an agent and employee of Defendant ALBERTELLI, appeared on behalf of Defendant DITECH. After the trial, the Court granted final judgment in favor of GMAC, in care of Defendant DITECH. (Composite Exhibit A, pages 106 - 109)

45. Upon losing the foreclosure trial, DELIA became extremely distraught. He suffered anxiety attacks, uncontrollable crying, outrage, chronic sleeplessness, loss of appetite and nausea. DELIA'S housemate saw DELIA sitting on the grass in his yard the evening of the trial, with tears streaming down his cheeks, mumbling in disbelief about how he lost his home when he had been timely paying his mortgage.

46. On January 7, 2014, DELIA timely appealed the final judgment to the 5th District Court of Appeals.

47. On February 6, 2014, DITECH, by and through its counsel ALBERTELLI, assigned its successful winning foreclosure bid to Fannie Mae. (Composite Exh. A, p. 110 - 111). Fannie Mae was not a bona fide purchaser at the time it made its bid.

48. On February 13, 2014, the Orange County Clerk of Court issued a Certificate of Sale to Fannie Mae. (Composite Exh. A, p. 112 - 113).

49. On March 5, 2014, the Orange County Clerk of Court issued a Certificate of Title to Fannie Mae. (Composite Exh. A, page 114).

50. On March 11, 2014, while the appeal was pending, ALBERTELLI sent DELIA a letter telling him to immediately vacate his home. (Composite Exhibit A, page 115).

51. On April 28, 2014, Defendant DITECH, through its counsel ALBERTELLI, made an *ex parte* motion for a writ of possession of the subject property. (Composite Exhibit A, pages 116 - 128).

52. DELIA received a copy of the motion that ALBERTELLI served on unknown tenants and contacted his attorney, Tushaar Desai. Mr. Desai was not served a copy of the motion for writ of possession by email or mail service because ALBERTELLI intentionally omitted service to him. Defendant Albertelli filed its motion through the Florida E-portal system which automatically would forward a copy of the motion to attorney Desai when the box is checked for either "Serve All" or when specifically checking the box for service to attorney Desai. ALBERTELLI intentionally did not check the box in the E-portal system for service to attorney Desai.

53. Upon learning of the motion for writ of possession, DELIA experienced extreme grief. He begged attorney Desai to help him keep his home. His anxiety, fear and confusion multiplied as he grieved and tried to understand how he could lose his home when he had timely paid his mortgage.

54. On May 16, 2014, the Court granted the motion for writ of possession. (Composite Exhibit A, pages 129 - 130). When DELIA learned that the writ of possession issued, and of his imminent involuntary displacement from his home, he became physically ill and could not sleep or eat. DELIA felt depressed, angry and abused by ALBERTELLI and DITECH. On May 21, 2014, Attorney Desai filed and served ALBERTELLI by email his Designation of Email Address in order to assure this problem was not repeated. (Composite Exhibit A, page 131)

55. On May 22, 2014, ALBERTELLI moved *ex parte* to correct the writ due to a scriveners error. (Composite Exh. A, page 132 - 134). ALBERTELLI again intentionally failed to serve attorney Desai in the same manner as before.

56. On October 9, 2014, ALBERTELLI unilaterally set the motion to correct the writ for hearing for October 28, 2014. ALBERTELLI again intentionally failed to serve attorney Desai in the same manner as previously. (Composite Exhibit A, page 135 - 138) DELIA found out about the hearing and brought it to the attention of attorney Desai. Mr. Desai contacted ALBERTELLI and ALBERTELLI removed the matter from the hearing calendar.

57. On October 17, 2014, the 5th District Court of Appeal reversed and remanded the case to the trial court for retrial. (Exhibit A, pages 139 - 143) ALBERTELLI represented DITECH in the appeal.

58. On August 21, 2015, DELIA deposed DITECH's representative Todd Visser. DITECH was represented at that deposition by ALBERTELLI's agent, attorney Rugh Cline. During that deposition, Mr. Visser provided documents demonstrating that DITECH knew that DELIA made all of the payments on his Mortgage Loan during the time default was alleged to occur. (Composite Exhibit A, pages 144 - 150).

59. Again, even though DITECH and ALBERTELLI knew DELIA was not in default when GMAC filed the Foreclosure Action and knew that the allegations contained in the foreclosure complaint were false, the Defendants elected to continue prosecuting the Foreclosure Action and proceeded to retrial on November 24, 2015. DITECH was again represented by Defendant ALBERTELLI, through its agent, attorney Jennifer Ngoe.

60. At the November 24, 2015 foreclosure trial, the sole evidence admitted to support DITECH's Foreclosure Action was a copy of an assignment of mortgage from MERS to Green Tree Servicing, LLC dated March 6, 2013. (Composite Exhibit A, pages 151 - 153). The assignment did not assign the Note and it was created after the action was filed. DITECH and ALBERTELLI failed to produce a promissory Note, failed produce a Mortgage, failed to prove that GMAC or DITECH had ever possessed a promissory Note or Mortgage, failed to prove that the debt had been transferred to either GMAC or DITECH and failed to prove default. The Court granted Final Judgment in favor of DELIA. (Composite Exhibit A, pages 154 - 155).

61. On March 7, 2016, the Circuit Court vacated and set aside the Final Judgment in favor of DITECH, the foreclosure sale and the Certificate of Sale, *nunc pro tunc* to November 6, 2014. (Composite Exhibit A, pages (156 - 157)

62. Beginning December 2015, through the present, DITECH sent monthly dunning letters to DELIA substantially similar to the one sent on March 16, 2016, which stated that DELIA was 3607 days past due on the Mortgage Loan, that DELIA owed $22,517.82 in non-escrow fees, and that the accelerated debt due was $419,340.31. The dunning letter attempted to collect a portion of debt barred by the statute of limitations period and it threatened that failure to pay "may result in fees and foreclosure - the loss of your home.". On information and belief, $22,517.82 represents DITECH'S attorney fees and other costs incurred in losing the Foreclosure Action. (Composite Exhibit A, pages 158 - 162, also see 166 - 172). DITECH was not entitled to collect attorneys' fees and costs for the foreclosure action because it was not a prevailing party.

63. On February 16, 2016, and every month thereafter, DITECH's dunning letters advise DELIA that "[a] first notice or filing to initiate foreclosure on your account has occurred." These notices combined with the events surrounding the Foreclosure Action caused DELIA to seek mental health treatment to cope with the constant fear of losing his home due to his present inability to cure such a large default which would not exist but for DITECH and ALBERTELLI'S actions.

64. On April 1, 2016, DELIA, through counsel, sent a Notice of Error, Qualified Written Request and FDCPA demand to Defendant DITECH (hereafter, "QWR"). (Composite

Exhibit A, pages 163 - 165). DELIA advised DITECH of the informational error relating to DITECH'S attempt to collect debts barred by the statute of limitations. DELIA also advised that DITECH failed to properly account for the payments he'd made, and DITECH was attempting to collect unlawful fees and costs. DELIA demanded DITECH validate the debt. DELIA also requested a full account history for the Mortgage Loan.

65. On April 7, 2016, DITECH acknowledged that it received DELIA'S QWR on April 4, 2016. (Composite Exhibit A, page 173). On April 12, DITECH advised DELIA that DITECH received the Mortgage Loan account from GMAC on February 1, 2013, and that "[t]here were no changes to the account terms or conditions due to the transfer." DITECH also advised that DITECH "neither originated, nor owns the account, but merely services it for a third party" and Fannie Mae owns the Mortgage Loan account. (Composite Exhibit A, page 174)

66. On April 16, 2016, DITECH sent DELIA a Billing Statement and Annual Escrow Account Disclosure Statement that increased the non-escrow charges from $22,517.82 to $97,532.82, and alleged DELIA was 3,638 days past due. (Composite Exhibit A, pages 166 - 172). DITECH continues to attempt to collect the $97,532.82 advance balance in every subsequent debt collection correspondence.

67. On May 3, 2016, DITECH sent a written response to the QWR, but failed to address DELIA'S concerns and failed to provide a complete response. (Composite Exhibit A, pages 175 - 198). Instead of providing the "full account history…includ[ing]…each charge, the date of the charge, and the amount of the charge," DITECH sent a "payment history and Note." DITECH's response did not include a copy of the note. DITECH'S response did not include a

payment history. All DITECH attached to the QWR response was a corporate advance and fees ledger showing hundreds of fees being assessed to the account on April 5, 2016 and three other fees assessed on April 16, 2016, April 25, 2016, and April 28, 2016.

68. DELIA has not received a Notice of Default nor a Notice of Intent to Accelerate from DITECH since DELIA prevailed in the Foreclosure Action. No new foreclosure action has been filed as of the date of this Action.

## VII.
## CAUSES OF ACTION

### COUNT I—ACTION FOR VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (12 U.S.C. §2601, *et seq.*)
### (Regulation X, 12 C.F.R. 1024)
### (Solely as to Defendant Ditech)

69. This is an action for damages against DITECH for violation of 12 U.S.C. § 2601, *et sequi*, known more commonly as the "Real Estate Settlement Procedures Act" (the "RESPA") and the regulations promulgated thereunder, brought herein pursuant to 12 U.S.C. § 2614.

70. DELIA realleges and reaffirms the allegations contained in Paragraphs 1 - 68, above as if set forth hereat in full.

71. At all times material hereto, the Mortgage Debt involved a "federally related mortgage loan" as said term is defined under 12 U.S.C. §2602(1).

72. At all times material hereto, Defendant DITECH was a "servicer" as said term is defined under 12 U.S.C. §2605(i)(2).

73. At all times material hereto, the Mortgage Debt involved a closed-end loan on DELIA'S principal residence.

74. In furtherance of its mortgage servicing activities, DITECH violated RESPA, 12 U.S.C. § 2605(e) and Regulation X, 12 C.F.R. §1024.35 with respect to servicing the Mortgage Debt by failing to take action as follows:

a. By failing to timely respond to DELIA'S QWR, in violation of 12 U.S.C. §2605(e)(1);

b. By failing to investigate and correct the account errors, in violation of 12 U.S.C. §2605(e)(2) and 12 C.F.R. §1024.35(b);

c. By failing to provide DELIA with a written explanation of the basis of DITECH'S actions taken or not taken with respect to DELIA'S QWR, in violation of 12 U.S.C. §2605(e)(2) and 12 C.F.R. §1024.35(a);

75. Had DITECH conducted all aspects of the error resolution process lawfully, DELIA would not have again forced to withstand foreclosure threats containing false allegations of breach and false allegations of amounts due and owing. As a direct and proximate result of DITECH'S above-described conduct in violations of the RESPA requirements, DELIA suffered damage including but not necessarily limited to loss of access to information about the actual amount due to cure a default for which he was never responsible, loss of access to ability to cure any enforceable default, renewed fear of loss of legal title to DELIA's homestead property, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation with respect to providing for his family, embarrassment, and despair in an amount to be proven at trial.

76. By virtue of the aforesaid violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605(e) and Regulation X,, 12 C.F.R. §1024.35, DITECH is liable to DELIA for actual damages in an amount to be determined by a jury, together with statutory damages up to the amount of $2,000.00, pursuant to 12 U.S.C. §2605(f)(1).

77. Pursuant to 12 U.S.C. §2605(f)(3), DELIA is entitled to recover reasonable costs and attorney's fees from DITECH in an amount to be determined by the Court.

78. DELIA has retained the undersigned law office to represent his or her interest herein and is obligated to pay said law office a reasonable fee for its services.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant, DITECH, for:

A. Actual damages pursuant to 12 U.S.C. §2605(f)(A); and

B. Statutory damages in the amount of $2,000.00 pursuant to 12 U.S.C. §2605(f)(B); and

C. Reasonable costs and attorney fees pursuant to 2 U.S.C. §2605(f)(3); and

D. Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**COUNT II—ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692, *et sequi*)**
**(Solely as to Defendant Ditech)**

79. This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

80. DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 68, above as if set forth here in full.

81. DELIA has been "the object of collection activity arising from consumer debt"

82. DELIA is a "Consumer" pursuant to the FDCPA in that he is a natural persons and was allegedly obligated to pay an obligation arising out of a transaction where the money, property, insurance or services, which are the subject of the transaction, was primarily for personal, family, or household purposes, to wit: a mortgage loan on a personal residence.

83. The debt at issue under the FDCPA was primarily for personal, family, or household purposes. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

84. DITECH has engaged in an act or omission prohibited by the or FDCPA.

85. Defendant is a "debt collector" within the definition established by the FDCPA, § 1692a(6), in that it uses the U.S. Mails in a business, the principal purpose of which is to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Defendant DITECH services approximately 700,000 accounts totaling about $24,000,000,000.00 in assets.

86. While the term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, the term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another. 15 U.S.C. § 1692a(4). Defendant DITECH acquired its servicing rights more than 6 years after the Plaintiff allegedly defaulted on the debt. Therefore, the Defendant was at all times relevant to this action, a debt collector under the FDCPA.

87. At all times material hereto, the Mortgage Loan was a "debt" as said term is defined under 15 U.S.C. § 1692a(5).

88. At all times material hereto, DELIA has been "the object of collection activity arising from consumer debt."

89. At all times material hereto, DELIA was a "consumer" as said term is defined under 15 U.S.C. §1692a(3).

90. At all times material hereto, DITECH was a "debt collector" as said term is defined under 15 U.S.C. §1692a(6).

91. At all times material hereto, DITECH was engaged in the regular collection of consumer debts alleged to be due to another using United States mail or telephone.

92. The FDCPA provides in relevant part:

> 15 U.S.C. § 1692 c(b):
> Communication with third parties
> Except as provided in section 1692b of this title, without the prior consent of the

consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudg ment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692d:
A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

[…]
(4) The advertisement for sale of any debt to coerce payment of the debt.
[…]

15 U.S.C. § 1692e provides in relevant part:
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

[…]
(2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
[…]
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
[…]
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692f:
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

93. DITECH violated 15 U.S.C. §§ 1692c(b) and 1692d when it publicly advertised and recorded with the clerk of court the notice of sale of DELIA's home, and sought and obtained the sale of the property in an attempt to collect the debt. None of that was reasonably necessary

to effectuate a postjudgment judicial remedy because on March 7, 2016, the judgment upon which that was based was set aside nunc pro tunc to November 6, 2014.

94. DITECH violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016 knowing DELIA had made payments on his mortgage loan and was not in default when the Foreclosure Action was filed.

95. DITECH violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016 knowing it had no evidence of standing. The State of Florida only authorizes residential mortgage foreclosure pursuant to Florida Statutes 673.3011. In particular, there was no Note, no Mortgage, no proof of possession of the Note at inception of the action, no proof that DITECH had authority to proceed on behalf of the alleged owner of the Note and no proof that the alleged owner of the Note actually owned the Note and paid value for it.

96. DITECH violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016, knowing the sole evidence of its standing was an assignment of mortgage that did not assign the note and which was made years after the action was filed, and by introducing that assignment of mortgage into evidence as proof of DITECH's standing.

97. DITECH violated 15 U.S.C. § 1692e and § 1692f by using dunning letters to DELIA that:

a. Repeatedly attempt to collect debts barred by the five-year statute of limitations set forth in Fla. Stat. §95.11. (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); *United States v. Kubrick*, 444 U.S. 111, 117 (1979));

b. Misrepresent the amounts due.

c. Falsely represent DITECH'S ability to collect debts barred by the statute of limitations.

d. Falsely represent to DELIA that his Mortgage Loan account is in the process of being foreclosed, when in fact it is not in the process of being foreclosed.

e. Falsely represent that DELIA may lose his home in foreclosure.

f. By informing Plaintiff DELIA that he owed DITECH a debt that DITECH was not entitled to enforce pursuant to Florida Statutes 673.3011. The State of Florida only authorizes residential mortgage foreclosure pursuant to Florida Statutes 673.3011. Defendant DITECH had no right to attempt to collect the debt because neither it nor the alleged owner of the Note possessed the Note and the alleged owner of the Note did not pay value for the purchase of the Note.

g. By misstating an amount due for the debt that was erroneous as it included sums incurred in the foreclosure action. It was not entitled to include those sums because it was not a prevailing party.

98. As a direct and proximate result of DITECH'S above-described conduct in violations of the FDCPA requirements, DELIA suffered damage including but not necessarily limited to loss of access to information about the actual amount due to cure a default for which he was never responsible, loss of access to ability to cure any enforceable default, renewed fear of loss of legal title to Plaintiff's homestead property, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation with respect to providing for his family, embarrassment, and despair in an amount to be proven at trial.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant, DITECH, for:

A. Actual damages;

B. Statutory damages in the amount of $1,000.00;

C. Reasonable costs and attorney fees; and

D. Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**COUNT III—ACTION FOR DECLARATORY RELIEF**
**(28 U.S.C. §2201, et sequi)**
**(Solely as to Defendant Ditech)**

99. DELIA repeats and realleges the allegations contained in paragraphs 1 - 68 above as if fully set forth herein.

100. 28 U.S. Code § 2201 states:

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

101. In Florida, a mortgage loan can only be enforced pursuant to Florida Statutes 673.3011. Defendant DITECH has shown at trial that it has no evidence that it can enforce the subject mortgage loan and it is threatening foreclosure and loss of DELIA's home.

102. Defendant DITECH has told Plaintiff DELIA that he owes it a debt, that failure to pay and that the debt owed is in an amount that includes sums beyond the five-year statute of limits as set forth in Florida Statutes 95.11. (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979))

103. A bona fide, actual, present and practical need for a declaration is necessary because enforcement attempts are ongoing and DITECH is actively attempting to collect the debt.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant, DITECH, for Declaratory Relief:

A. That DITECH does not have an enforceable debt.

B. That the amount of the debt is overstated.

**COUNT IV—ACTION FOR OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (F.S. §559.72, et sequi)**
**(Solely as to Defendant Ditech)**

104. DELIA repeats and re-alleges the allegations contained in paragraphs 1 - 68, above, as if fully set forth herein.

105. Section 559.72 of the Florida Statute ("FCCPA") provides:

In collecting consumer debts, no person shall:

> [...]
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
> (10) Use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law, when it is not.
> [...]

106. DELIA has been "the object of collection activity arising from consumer debt".

107. DELIA is a "Consumer" pursuant to the FCCPA in that he is a natural person and was allegedly obligated to pay an obligation arising out of a transaction where the money, property or insurance or services which were the subject of the transaction were primarily for personal, family, or household purposes, to wit: a mortgage loan on a personal residence.

108. The debt at issue under the FCCPA was primarily for personal, family, or household purposes. The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(1).

109. DITECH has engaged in an act or omission prohibited by the or FCCPA.

110. DITECH is a "debt collector" within the definition established by the FCCPA, Fla. Stat. § 559.55(6), in that it uses the U.S. Mails within this state in a business, the principal purpose of which is to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Defendant DITECH services approximately 700,000 accounts totaling about $24,000,000,000.00 in assets.

111. DITECH is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(7) in that it is a business entity engaged in the business of soliciting consumer debts for collection and collecting consumer debts.

112. DITECH is an "out-of-state consumer debt collector" within the definition established by the FCCPA, Fla. Stat. § 559.55(8) in that its business activities in Florida involve both collecting or attempting to collect consumer debt from debtors located in this state by means of the U.S. Mails originating from outside this state and also solicits consumer debt accounts for collection from creditors who have a business presence in Florida.

113. DITECH regularly engages in the collection of consumer debts on behalf of many lenders as a mortgage loan servicer.

114. DITECH is a "person" within the meaning of the FCCPA, and in particular as it is used in Fla. Stat. § 559.72.

115. DITECH engaged in an act or omission prohibited under Fla. Stat. § 559.72 by attempting to collect the debt when its collection was not permitted by law, to wit, by sending dunning letters to DELIA that:

a. Repeatedly attempt to collect debts barred by the five-year statute of limitations set forth in Fla. Stat. §95.11. (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

b. Misrepresent the amounts due.

c. Falsely represent DITECH'S ability to collect debts barred by the statute of limitations.

d. Falsely represent to DELIA that his Mortgage Loan account is in the process of being foreclosed, when in fact it is not in the process of being foreclosed.

e. Falsely represent that DELIA may lose his home in foreclosure.

f. that DELIA owed DITECH a debt, (Which debt DITECH was not entitled to enforce pursuant to Florida Statutes 673.3011. The State of Florida only authorizes residential mortgage foreclosure pursuant to Florida Statutes 673.3011. DITECH had no right to attempt to collect the debt because neither it nor the alleged owner of the Note possessed the Note and the alleged owner of the Note did not pay value for the purchase of the Note.)

g. By misstating an amount due for the debt that was erroneous as it included sums incurred in the foreclosure action. It was not entitled to include those sums because it was not a prevailing party.

116. As a direct and proximate result of DITECH'S above-described conduct in violations of the FCCPA requirements, DELIA suffered damage including but not necessarily limited to loss of access to information about the actual amount due to cure a default for which he was never responsible, loss of access to ability to cure any enforceable default, renewed fear of loss of legal title to DELIA's homestead property, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation with respect to providing for his family, embarrassment, and despair in an amount to be proven at trial.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant, DITECH, for:

A. Actual damages;

B. Statutory damages in the amount of $1,000.00;

C. Reasonable costs and attorney fees; and

D. Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**<u>COUNT V—ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692, *et sequi*)</u>**
**(Solely as to Defendant Albertelli)**

117. This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

118. DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 68, above as if set forth hereat in full.

119. Plaintiff has been "the object of collection activity arising from consumer debt".

120. Plaintiff is a "Consumer" pursuant to the FDCPA in that he is a natural persons and was allegedly obligated to pay an obligation arising out of a transaction where the money, property, insurance or services, which are the subject of the transaction, was primarily for personal, family, or household purposes, to wit: a mortgage loan on a personal residence.

121. The debt at issue under the FDCPA was primarily for personal, family, or household purposes. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

122. ALBERTELLI has engaged in an act or omission prohibited by the or FDCPA.

123. ALBERTELLI is a "debt collector" within the definition established by the FDCPA, § 1692a(6), in that it uses the U.S. Mails in a business, the principal purpose of which is to

regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

124. At all times material hereto, the Mortgage Loan was a "debt" as said term is defined under 15 U.S.C. § 1692a(5).

125. At all times material hereto, DELIA has been "the object of collection activity arising from consumer debt."

126. At all times material hereto, DELIA was a "consumer" as said term is defined under 15 U.S.C. §1692a(3).

127. At all times material hereto, ALBERTELLI was a "debt collector" as said term is defined under 15 U.S.C. §1692a(6).

128. At all times material hereto, ALBERTELLI was engaged in the regular collection of consumer debts alleged to be due to another using United States mail or telephone.

129. The FDCPA provides in relevant part:

> 15 U.S.C. § 1692 c(b):
> Communication with third parties
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudg ment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.
>
> 15 U.S.C. § 1692d:
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [...]

(4) The advertisement for sale of any debt to coerce payment of the debt.
[...]

15 U.S.C. § 1692e provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
[...]
(2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
[...]
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
[...]
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692f:
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

130. ALBERTELLI violated 15 U.S.C. §§ 1692c(b) and 1692d when it publicly advertised and recorded with the clerk of court the notice of sale of DELIA's home, and sought and obtained the sale of the property in an attempt to collect the debt. None of that was reasonably necessary to effectuate a postjudgment judicial remedy because on March 7, 2016, the judgment upon which that was based was set aside nunc pro tunc to November 6, 2014.

131. ALBERTELLI violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016 knowing DELIA had made payments on his mortgage loan and was not in default when the Foreclosure Action was filed.

132. ALBERTELLI violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016 knowing it had no evidence of standing. The State of Florida only authorizes residential mortgage foreclosure pursuant to Florida Statutes 673.3011. In particular, there was no Note, no Mortgage, no proof of possession of the Note at inception of the action, no proof that DITECH had authority to proceed on behalf of the alleged owner of the Note and no proof that the alleged owner of the Note actually owned the Note and paid value for it.

133. ALBERTELLI violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f when it proceeded to trial on November 24, 2016, knowing the sole evidence of its standing was an assignment of mortgage that did not assign the note and which was made years after the action was filed, and by introducing that assignment of mortgage into evidence as proof of DITECH's standing.

134. As a direct and proximate result of ALBERTELLI'S above-described conduct in violations of the FDCPA requirements, DELIA suffered damage, including but not necessarily limited to pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation with respect to providing for his family, embarrassment, and despair in an amount to be proven at trial.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant, ALBERTELLI, for:

A. Actual damages;

B. Statutory damages in the amount of $1,000.00;

C. Reasonable costs and attorney fees; and

D. Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**COUNT VI—MALICIOUS PROSECUTION**
**(As to both Defendant Ditech and Albertelli)**

135. This is an action for malicious prosecution by both Defendant DITECH and ALBERTELLI.

136. DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 68, above as if set forth here in full.

137. The foreclosure action was an original civil judicial proceeding that was initiated against DELIA by a party, to wit: GMAC Mortgage Corp. ("GMAC").

138. After GMAC filed bankruptcy it ceased compensating its lawyer and ceased participating in the foreclosure action. Without substituting in as a party, DITECH retained ALBERTELLI to continue to prosecute the action. (See the Final Judgment of Foreclosure dated December 10, 2013, para. 4, which states "Plaintiff, whose address is c/o Green Tree Servicing, LLC, 1155 Centre Point Drive, Suite 7, Mendota Heights, MN 55120, holds a lien for the grand total sum specified in Paragraph 2 herein." (Composite Exhibit A, page 106)) DITECH and ALBERTELLI were the legal cause of the continued original proceeding against DELIA.

139. The foreclosure action terminated after trial in favor of DELIA.

140. There was no probable cause for the original proceeding because DELIA did not default, there was no evidence of DITECH's standing or GMAC's standing, including no Note,

no Mortgage, no proof of possession of the Note at inception of the action, no proof that Defendant DITECH had authority to proceed on behalf of the alleged owner of the Note and no proof that the alleged owner of the Note actually owned the Note and paid value for it.

141. DITECH and ALBERTELLI acted with malice, as they knew there was no probable cause for the original proceeding, they knew DELIA did not default, that there was no Note, no Mortgage, no proof of possession of the Note at inception of the action, no proof that DITECH had authority to proceed on behalf of the alleged owner of the Note and no proof that the alleged owner of the Note actually owned the Note and paid value for it. Further, they acted with malice in obtaining a writ of possession against DELIA when there was no lawful judgment of foreclosure, no lawful sale and no lawful certificate of title issued to another.

142. As a direct and proximate result of the conduct of DITECH and ALBERTELLI, described above, DELIA suffered damage including but not necessarily limited to loss of access to ability to cure any enforceable default, renewed fear of loss of legal title to DELIA's homestead property, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation with respect to providing for his family, embarrassment, and despair in an amount to be proven at trial.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants DITECH and ALBERTELLI, for:

A. Actual damages;

B. Punitive damages;

C. Reasonable costs; and

D. Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**COUNT VII—WRONGFUL FORECLOSURE BY FRAUD**
**(As to both Defendant Ditech and Albertelli)**

143. This is an action for wrongful foreclosure by fraud by both Defendant DITECH and ALBERTELLI.

144. DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 68, above as if set forth here in full.

145. After GMAC filed bankruptcy it ceased compensating its lawyer and ceased participating in the foreclosure action. Without substituting in as a party, DITECH retained ALBERTELLI to continue to prosecute the action. (See the Final Judgment of Foreclosure dated December 10, 2013, para. 4, which states "Plaintiff, whose address is c/o Green Tree Servicing, LLC, 1155 Centre Point Drive, Suite 7, Mendota Heights, MN 55120, holds a lien for the grand total sum specified in Paragraph 2 herein." (Composite Exhibit A, page 106)) DITECH and ALBERTELLI were the legal cause of the continued original proceeding against DELIA.

146. DITECH and ALBERTELLI misrepresented material facts to DELIA, to DELIA's foreclosure defense counsel, and to the foreclosure trial court concerning the real parties in interest, authority to prosecute the foreclosure action, regulatory right to foreclose, and existence of and amount of default, its standing to enforce the note and DELIA's default (lack of default).

147. DITECH and ALBERTELLI knew that the representations set forth above were false or DITECH and ALBERTELLI made such representations recklessly, and DITECH and/or ALBERTELLI had no reasonable grounds for believing those representations to be true.

148. By virtue of the acts described above, DITECH and ALBERTELLI knew that the above representations and omissions concerning the real parties in interest, authority to prosecute the foreclosure action, regulatory right to foreclose, and existence of and amount of default, its standing to enforce the note and DELIA's default (lack of default) were material and important to DELIA and his counsel in the defense of his foreclosure action.

149. By virtue of the acts described above, DITECH and ALBERTELLI intended to deceive DELIA, and DELIA, his counsel and the trial court relied upon the misrepresentations and omissions to DELIA'S detriment.

150. As a direct and proximate result of the acts described above, DITECH and ALBERTELLI defrauded DELIA, for which he is entitled to relief.

151. As a direct and proximate result of the fraud disclosures and intentional non-disclosures by DITECH and ALBERTELLI, DELIA'S damages include excessive interest charges, loss of his home, injury to his credit reputation, pain and suffering, strain on his family relationships, humiliation, loss of appetite, loss of self-esteem, nausea, crying, loss of sleep, headaches, anxiety, fear of losing his home, loss of happiness, loss of concentration, sense of financial instability, actual financial instability, anger, feelings of helplessness, irritability, embarrassment, and frustration, for which he is entitled to relief.

### *Prayer For Relief*

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants DITECH and ALBERTELLI, for:

A. Actual damages;

B. Punitive damages;

C. Reasonable costs; and

D. Such other and further relief as justice may require and allow, including prejudgment and post-judgment interest.

## VIII
## DEMAND FOR TRIAL BY JURY

Plaintiff DELIA demands a trial by jury.

Brevard Consumer Law Center

/s/ George M. Gingo
GEORGE M. GINGO
FBN 879533
Counsel for Plaintiff
400 Orange Street
Titusville, FL 32796
Phone: (321) 264-9624
Fax: (866) 311-9573
gingo.george@gmail.com
Counsel for Plaintiff

LegalNinja, LLC

/s/ Catherine J. Jones
CATHERINE J. JONES
Florida Bar No.: 0709271
400 Orange St.
Titusville, Florida 32796

(321) 888-2280 Telephone
(321) 400-1192 Facsimile
Email: jones@mylegalninja.com
Co-Counsel for Plaintiff