# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DENNIS DELIA,**

      **Plaintiff,**

**v.**                                                 Case No: 6:16-cv-1901-Orl-31DCI

**DITECH FINANCIAL LLC and JAMES E. ALBERTELLI, P.A.,**

      **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 37) filed by the Defendant, Ditech Financial LLC ("Ditech"), and the Response in Opposition (Doc. 49) filed by the Plaintiff, Dennis Delia.

**I.    Background**

According to the allegations in the First Amended Complaint (Doc. 34), which are taken as true for the purposes of this order, Delia financed the purchase of his home in Orlando, Florida, with a mortgage loan from USAA Federal Savings Bank ("USAA"). (Doc. 34 ¶¶ 12–14.) GMAC Mortgage Corporation ("GMAC") serviced Delia's loan. (Doc. 49 at 2.)

On July 28, 2006, USAA sent Delia a letter informing him that he was in default as of May 1, 2006. (Doc. 34-1 at 49–51.) Five months later, GMAC filed a foreclosure action against Delia. (Doc. 34 ¶ 20.) While the foreclosure action was pending, GMAC became insolvent and transferred the servicing of the mortgage to Ditech, which took over the suit.

On December 10, 2013, the state court granted judgment for Ditech and set Delia's property for auction. (Doc. 34 ¶ 28; Doc. 34-1 at 70.) Delia filed an appeal on January 7, 2014, but

while the appeal was still pending, the property was sold to the Federal National Mortgage Association ("Fannie Mae"). A certificate of sale and title were issued accordingly. (Doc. 34 ¶¶ 30–32.)

On October 17, 2014, the Fifth District Court of Appeal ruled in Delia's favor, reversing the judgment of the trial court and remanding the action for retrial. (Doc. 34-2 at 85–88.) Before the foreclosure action was retried, Delia sued Ditech, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat §§ 559.55–.785. But on July 15, 2015, Delia and Ditech entered into a settlement agreement in regard to the FDCPA/FCCPA suit, with Delia releasing his then-existing claims against Ditech. (Doc. 34 ¶ 37.)

On November 24, 2015, the foreclosure action was retried and Delia prevailed. (Doc. 34-1 at 111–12.) On February 23, 2016, Ditech and Delia entered into a second settlement agreement, which resolved Delia's claim to attorneys' fees and costs incurred in the foreclosure action and appeal. (Doc. 34 ¶ 47.) On March 7, 2016, the first judgment in the foreclosure action was vacated, along with the certificates of sale and title that had been issued to Fannie Mae. (Doc. 34-1 at 113.)

After the foreclosure action concluded, Ditech continued sending monthly billing statements to Delia, which stated that he owed principal, interest, and other various charges from May 2, 2006, to present. (Doc. 34 ¶ 45.) Beginning on February 16, 2016, the billing statements included a notice that "[a] first notice of filing to initiate foreclosure on your account has occurred." (Doc. 34 ¶ 46.) The March 16, 2016 billing statement included a "corporate advance balance" of $22,517.82.[1] (Doc. 34-2 at 15.)

---

[1] According to Ditech's billing statements, the corporate advance balance consists of

On April 1, 2016, Delia sent a qualified written request (the "QWR") to Ditech claiming that it had improperly calculated sums due, misapplied payments, and improperly included attorneys' fees in the balance sought. (*Id.* at 20.) Ditech acknowledged receipt of the QWR on April 7, 2016. (*Id.* at 23.) Before Ditech replied to the QWR, Delia received the April 16, 2016, billing statement from Ditech, showing that the advance corporate balance had increased from $22,517.82 to $97,542.82. On May 3, 2016, Ditech responded to the QWR, attaching what appears to be ledger of corporate advance fees that it charged Delia from October 10, 2001, to May 2, 2016. (*Id.* at 32–55.) From the May 2016 statement onward, Ditech's billing statements included the $97,532.82 corporate advance balance.

Delia brings this action against Ditech alleging that its pursuit of foreclosure, representations at trial, delay in re-vesting him with title, and representations in billing statements violated the FDCPA and the FCCPA. Delia also alleges that Ditech violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–17, by failing to adequately respond to the QWR. And, finally, Delia alleges that Ditech's pursuit of foreclosure constituted malicious prosecution under Florida law.

## II. Motion to Dismiss Standard

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint—it does not reach the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court limits its consideration to

---

money advanced by Ditech to pay taxes, insurance, and any other amount due and not part of an escrow account. (Doc. 34-2 at 15.)

the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

Federal Rule of Civil Procedure 8(a)(2) mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 35 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The plaintiff must allege facts that raise a right to relief above the speculative level and indicate the presence of the required elements. *Twombly*, 550 U.S. at 555; *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. The FDCPA

"The FDCPA regulates what debt collectors can do in collecting debts." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (citing 15 U.S.C. §§ 1692–1692p).

To establish a valid claim under the FDCPA, a plaintiff must show that (1) he was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000)). Ditech does not challenge Delia's allegation that it is a debt collector under the FDCPA. Therefore, the Court limits its analysis to the two remaining elements: whether Delia was subjected to debt collection activity, and whether Delia has sufficiently alleged that Ditech engaged in an act prohibited by the FDCPA.

### A.     15 U.S.C. § 1692d – Count I

Under § 1692d, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Banned conduct includes the 'use of violence,' the 'use of obscene or profane language,' and repeated phone calls intended to annoy or harass any person in connection with the collection of a debt." *Miljkovic*, 791 F.3d at 1305. Claims under this section are viewed "from the perspective of a consumer whose circumstances make him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). Delia claims that Ditech violated § 1692d when it "omitted revesting title in the home to [him] when [he] won the foreclosure appeal and immediately after judgment was granted for [him at retrial]" and "used the issue of revesting of title as a negotiating tool to try to twist [his] arm to an agreement more favorable to [it]." (Doc. 34 ¶¶ 81, 149.)

By itself, Ditech's delay in vesting Delia with title is not sufficiently connected to debt collection to warrant coverage under the FDCPA. Section 1692d only prohibits conduct "in connection with the collection of a debt." *Id.* § 1692d. Conduct is connected to debt collection

when its "animating purpose" is "to induce payment by the debtor." *Goodin*, 114 F. Supp. 3d at 1205. (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)). Further, "[f]oreclosing on a home is the enforcement of a security interest, not debt collection." *Id.* at 1206 (citation omitted). But, "[w]hen a foreclosure complaint seeks a deficiency judgment if applicable, it attempts to collect on the security interest *and* the note," and is, therefore, debt collection activity under the FDCPA. *Id.* at 1207 (citation omitted). This distinction is made because "[a] promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another," whereas, "a security interest is not a promise to pay a debt; it is an interest in some collateral that a lender can take if the debtor does not fulfill a payment obligation." *Reese v. Ellis, Painter, Ratteree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) (citation omitted).

Here, the distinction between enforcement of a promissory note and security interest is instructive. The first foreclosure case resulted in a judgment for Ditech and an order to sell Delia's property at auction. Once the sale was completed, Ditech was still owed the difference between the sale price and the amount due on the note—i.e., the deficiency. Ditech's attempt to collect that deficiency would, undoubtedly, constitue debt collection activity governed by the FDCPA. But the certificates of sale and title were issued as a result of the court-ordered foreclosure sale and the enforcement of Ditech's secured interest in Delia's home—not collection of the deficiency. Thus, without some further allegation showing that the "animating purpose" of Ditech's delay in vesting Delia with title was the collection of debt, Delia has not sufficiently alleged that this conduct violated § 1692d.

Further, even if the delay in vesting Delia with title was somehow connected to debt collection, the conduct Delia complains of does not rise to the level of harassment, oppression, or abuse. Clearly, failing to vest title immediately is not akin to the use of violence, the use of

obscene or profane language, or repeated phone calls intended to annoy or harass. *Miljkovic*, 791 F.3d at 1305.

While Delia has failed to allege sufficient facts to connect the delay in vesting him with title to debt collection and also failed to allege facts that show that the delay rises to the level of harassment, oppression, or abuse, there may be some set of facts that Delia could alleged to cure these defects. Therefore, Count I will be dismissed without prejudice. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004) ("The complaint should only be dismissed with prejudice if it appears beyond doubt that SBS can prove no set of facts which would entitle it to relief.").

### B. 15 U.S.C. § 1692e(2) – Count II

Section 1692e generally prohibits the use of "any false, deceptive, or misleading" representations or means "in connection with the collection of any debt." Section 1692e(2) more specifically prohibits the false representation of "the character, amount, or legal status of any debt; or . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

Delia alleges that Ditech violated § 1692e(2) in three ways. First, Delia alleges that Ditech misrepresented the "character, amount or legal status" of a debt at the retrial of the foreclosure case, where it "falsely alleged it was owed a debt, yet it had no note, no mortgage, [and] no evidence of acceleration or default;" and where it "introduced a notarized assignment of mortgage" to establish standing. (Doc. 34 ¶ 86.) Yet, Delia also alleges that he "executed and delivered a promissory note . . . and a mortgage" (Doc. 34 ¶ 12), that he made payments under the mortgage (*Id.* ¶¶ 16–19), that Ditech was the servicer of that mortgage (*Id.* ¶ 25, 28, 63), and that Ditech acquired its servicing rights to the mortgage after Delia was already in default. (*Id.* ¶¶ 62–

63.) Thus, Delia's own allegations contradict his claim that Ditech falsely represented that it was assigned his mortgage or owed a debt.

Second, Delia alleges that Ditech violated § 1692e(2) through billing statements that it sent to Delia from December 2015 to present. Delia claims that Ditech's billing statements were false representations of the character, amount, or legal status of debt because they included amounts barred by either res judicata or Florida's statute of limitations. (Doc. 34 ¶ 87.) In short, Delia has attempted to turn affirmative defenses that he could potentially use to dispute the validity of the debt to create an action under the FDCPA. But such defenses "should be raised—if at all—as an affirmative defense[s] to actual collection or foreclosure," not as an affirmative action under the FDCPA. *Garrison v. Caliber Home Loans, Inc.*, No. 616CV978ORL37DCI, 2017 WL 89001, at *7 (M.D. Fla. Jan. 10, 2017).

Finally, Delia alleges that Ditech violated § 1692e(2) when it intentionally mislabeled attorneys' fees that he did not owe as corporate advance fees in its billing statements. Supporting his claim, Delia alleges that the March 16, 2016, billing statement reported that he owed $22,517.82 in corporate advance fees. Only one month later, the corporate advance fees climbed to $97,532.82—an increase of $75,015.00. (Doc. 34 ¶¶ 88, 89.) Moreover, this increase occurred only two-and-a-half months after the February 23, 2016 agreement in which the parties settled the attorneys' fees and costs that Delia incurred in the foreclosure action and appeal. Accordingly, Delia alleges that Ditech increased its corporate advance fees in an attempt to recoup the amount paid to Delia under the February 23, 2016 settlement agreement.[2] Such an attempt by Ditech

---

[2] The Court cannot confirm the amount of the attorneys' fees that the parties agreed to in the February 23, 2016 agreement because that agreement is confidential. (Doc. 34 ¶ 47.)

would certainly be a misrepresentation of the character, amount, or legal status of a debt. Therefore, Count II survives Ditech's motion.

### C. 15 U.S.C. § 1692e(5) – Count III

Section 1692e(5) proscribes debt collectors from threatening "action that cannot legally be taken or that is not intended to be taken." Alleged violations of § 1692e(5) are subject to a two-prong analysis. First, courts consider whether the language used by the debt collector is a threat. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). If so, courts then "consider whether the action threatened is one which could be legally taken." *Id.*

Delia alleges that Ditech violated § 1692e(5) by retrying the foreclosure action because it was "a mere threat to obtain judgment." (Doc. 34 ¶ 95.) But such a claim is unsupported by the facts as alleged, because Ditech actually obtained a judgment, and then pursued judgment a second time. Even assuming, *arguendo*, that the "least-sophisticated consumer" would interpret foreclosure as a threat, Ditech's threatened action—i.e., bringing a foreclosure suit—is one that it could legally take. *See id.* at 1197 (finding that a debt collector that threatened legal action violated § 1692e(5) because it had not registered a debt collection agency as required by Florida statute and could not legally bring an action in Florida courts as a result).

Additionally, Delia alleges that Ditech violated § 1692e(5) by including a warning in its billing statements that, "[a] first notice or filing to initiate foreclosure on your account has occurred." (Doc. 34 ¶ 96.) Assuming that the least-sophisticated consumer would interpret this statement as a threat, Delia claims that, through this statement, Ditech has threatened to foreclose on him yet again, but legally cannot because "a first notice or filing to initiate foreclosure" had never been given to Delia, and because, under the mortgage agreement, such a notice was a condition precedent to foreclosure. (Doc. 34 ¶ 96.)

However, like his previous arguments regarding res judicata and the statute of limitations, Delia has improperly attempted to craft an FDCPA claim out of an affirmative defense. *Garrison*, 2017 WL 89001, at *7. The mere fact that Delia could raise Ditech's failure to fulfill a condition precedent as a defense against foreclosure does not mean that Ditech is barred from bringing suit in the first place.

While Delia has failed to allege facts showing that Ditech legally could not pursue yet another foreclosure, as allegedly threatened by the notice included in the billing statements, there may be some set of facts demonstrating such a prohibition. Therefore, Count III will be dismissed without prejudice. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1070.

### D.   15 U.S.C. § 1692e(10) – Count IV

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Under this subsection, courts ask whether the "least sophisticated consumer" would be deceived or misled by the communication at issue. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) (citing *Jeter*, 760 F.2d at 1178). "Whether a particular communication is false or deceptive is a question for the jury." *Id.* However, whether a plaintiff has alleged facts sufficient to state a claim is a legal question for the court. *Id.* (citing *Miljkovic*, 791 F.3d at 1307 n. 11).

As an initial matter, Delia simply repeats the allegations from his claim under § 1692e(2)—that, at the retrial of the foreclosure action, Ditech falsely alleged that it was assigned his mortgage and owed a debt—in an attempt to establish a violation of § 1692e(10). (*See* Doc. 34 ¶ 86, 101.) But, again, Delia's own allegations contradict his claim that any false representation was made at retrial. Therefore, said allegations do not support a claim under § 1692e(10). *See supra* Section III(B).

Delia also alleges that Ditech's inclusion of the notice in its billing statements that "[a] first notice or filing to initiate foreclosure . . . has occurred," was the use of a false or deceptive means to collect a debt. Delia claims this statement was false because Ditech never gave him any such notice, and he further claims that the statement was deceptive because Ditech has not initiated foreclosure. (Doc. 34 ¶ 102.) But, contrary to his allegations, Delia received a notice of default, albeit, one that was sent by his former mortgage servicer. (Doc. 34-1 at 50–51). And the billing statements themselves contained warnings that Delia was in default within the same box that the complained-of statement was printed. Specifically, the box containing the notice was labeled "Delinquency Notice" and further explained, "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure—the loss of your home." (Doc. 35-2 at 115.)

Next, Delia alleges that Ditech's response to the QWR was deceptive because it did not disclose whether non-prevailing party attorneys' fees were hidden within the corporate advance fees that Ditech sought in its billing statements. As will be further explained below, a qualified written request is a tool provided by the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–17 ("RESPA"), whereby a debtor can either request information concerning his mortgage or inform his mortgage servicer that an error has occurred in the servicing of his loan. 12 U.S.C. § 2605(e). RESPA also sets the requirements for a mortgage servicer's response to a qualified written request and the remedies available to a debtor when a mortgage servicer's response is non-compliant. *Id.* Given that a qualified written request is something that is both provided for and governed by RESPA, Delia's claim that Ditech's response to the QWR was insufficient is not cognizable under the FDCPA.

Finally, Delia alleges that the billing statements from May 2016 to present were false or deceptive because Ditech continued seeking payment for the $97,532.82 labeled as corporate advance fees, a portion of which Delia alleges Ditech is not entitled to. (Doc. 34 ¶ 103.) But Delia does not allege that the billing statements were false or deceptive *means to collect a debt*—i.e., that the billing statements were a ruse to entice him into payment or provide information. *See Jeter*, 760 F.2d at 1177 (finding that a debt collector's ambiguous letter threatening to recommend legal action unless the debtor paid within five days could be a false or deceptive means to collect a debt); *Kuehn v. Cadle Co.*, 335 Fed. App'x 827, 829 (11th Cir. 2009) (finding that a debt collector's warning that the IRS could impose a $50 penalty if the debtor did not provide her tax identification number was a false or deceptive means to collect a debt as a matter of law). Rather, he only repeats his allegation from Count II, that the billing statements contained a false representation of the character, amount, or legal status of a debt.

Delia could potentially establish a claim under § 1692e(10) if he cured the contradictions in his complaint or alleged facts showing how the mischaracterization of the corporate advance fees were a deception used as a means to collect a debt. Therefore, Count IV will be dismissed without prejudice. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1070.

### E. 15 U.S.C. § 1692f – Count V

Delia's final FDCPA claim arises under § 1692f, which prohibits a debt collector's use of "unfair or unconscionable means to collect or attempt to collect any debt." Besides its general prohibition of unfair or unconscionable conduct, the section provides a non-exhaustive list of conduct that is specifically prohibited. 15 U.S.C. §§ 1692f(1)–(8). While a plaintiff is not required to allege any of the conduct in §§ 1692f(1)–(8), a plaintiff bringing an action under § 1692f's general provision must specifically identify how the alleged conduct was unfair or

unconscionable. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009). "A complaint will be deemed deficient under [§ 1692f] . . . if it does not identify any misconduct beyond that which [plaintiffs] assert violate other provisions of the FDCPA." *Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007); *see Carey v. Pinnacle Credit Servs., LLC*, No. 6:13-CV-426-ORL-37TB, 2014 WL 54115, at *1 (M.D. Fla. Jan. 7, 2014) (finding that allegations that were merely duplicative of other alleged FDCPA violations were insufficient to state a claim under § 1692f's general provision).

Here, Delia does not assert that Ditech engaged in any conduct specifically prohibited by §§ 1692f(1)–(8) and, instead, relies on § 1692f's general prohibition against unfair or unconscionable conduct. Yet he has only repeated the allegations of conduct that he claims violated §§ 1692d, 1692e(2), 1692e(5), and 1692e(10) without specifying how that conduct was also unfair or unconscionable so as to violate § 1692f. If Delia alleged facts beyond those that he relies on to establish the other alleged FDCPA violations, he may yet establish a claim under § 1692f. But because he has failed to do so, Count V will be dismissed without prejudice. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1070.

**IV.    Florida Consumer Collection Practices Act – Count VII**

The Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55–.785, was enacted as an "addition to the requirements and regulations of the [FDCPA]," and its goal is "to provide the consumer with the most protection possible under either state or federal statute." Fla. Stat. § 559.565; *LeBlanc*, 601 F.3d at 1192.

Delia generally alleges that Ditech violated § 559.72. That section is titled "Prohibited Practices Generally" and contains a list of nineteen subsections describing prohibited conduct ranging from simulating law enforcement in any manner to communicating with a debtor between

the hours of 9 p.m. and 8 a.m. Fla Stat § 559.72(1), (17). Delia alleges that Ditech violated § 559.72 of the FCCPA to the same extent that it violated the FDCPA. And, while Delia has not identified any particular subsection of § 559.72 that Ditech violated, Ditech challenges Delia's FCCPA claim only to the same extent that it challenges the claims Delia raised under the FDCPA. Therefore, consistent with the above analysis of Delia's FDCPA claims, Delia has stated a claim under the FCCPA, and Count VII survives Ditech's motion. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1070.

## V.      RESPA – Count VI

RESPA "is a consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related loans, including responding to borrower inquiries." *McLean v. GMAC Morg., Corp.*, 398 Fed. App'x 467, 471 (11th Cir. 2010). Delia's claim arises under 12 U.S.C. § 2605(e), which describes how a loan servicer is to respond to a qualified written request or notice of error. To succeed in claim under § 2605(e) Delia must show: (1) that Ditech is a mortgage servicer; (2) that Ditech received the QWR; (3) that the QWR is related to the servicing of the loan; (4) that Ditech failed to respond adequately; and (5) that he is entitled to actual or statutory damages. 12 U.S.C. § 2605(e); *Frazile v. EMC Mortg. Corp.*, 382 Fed. App'x. 833, 836 (11th Cir. 2010). In its motion, Ditech only disputes whether Delia suffered any damages, therefore, the Court limits its review accordingly.

"Damages are 'an essential element' of a RESPA claim." *Lage v. Ocwen Loan Serv. LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016) (quoting *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016)). "RESPA states that actual damages arise 'as a result of' the servicer's alleged violation." *Renfroe*, 822 F.3d at 1246. Actual damages under RESPA include both

pecuniary and non-pecuniary damages, such as emotional distress. *McLean*, 595 F. Supp. 2d at 1366.

Here, Delia claims that Ditech inadequately responded to the QWR because it did not provide a full account history, as he had requested, and did not explain what the corporate advance fees were for. As a result, Delia claims that he has suffered a variety of emotional distress damages including, *inter alia*, constant fear of dispossession, frustration, aggravation, humiliation, and embarrassment. (Doc. 34 ¶ 119.) Delia further claims that he has suffered economic damages, for he has been unable to sell his home because the unexplained corporate advance fees have increased the amount that he owes beyond his home's value. (*Id.* ¶¶ 55–56.) Essentially, Delia claims that if Ditech had properly investigated the fees in question, the $97,532.92 would be significantly reduced and Delia would be able to sell his home.

Ditech argues that the damages Delia complains of are not attributable to its RESPA response, but to the fact that he had defaulted on his loan yet again; a status he had retained before he sent the QWR. But, while much of the damage Delia complains of may have existed before Ditech sent its RESPA response, the Court can reasonably infer that Ditech's alleged failure to provide the information that Delia requested exacerbated the frustrations and difficulties that he may have already been suffering. Thus, Delia has sufficiently established actual damages under RESPA, and Count VI survives Ditech's motion.

## VI. Malicious Prosecution – Count XIII

To adequately allege malicious prosecution of a civil claim under Florida law, a plaintiff must establish:

> (1) a judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant filed the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding was in

> favor of the present plaintiff; (4) absence of probable cause for the
> original proceeding; (5) malice on the part of the present defendant;
> and (6) the plaintiff suffered damage as a result of the original
> proceeding.

*Halmos v. Bomardier Aerospace Corp.*, 404 Fed App'x 376, 377 (11th Cir. 2010) (citing *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994)). In the instant case, Delia bases his malicious prosecution claim on Ditech's continued pursuit of foreclosure. Ditech challenges Delia's claim, arguing that it is barred by the July 15, 2015 settlement agreement and that Delia has failed to sufficiently show that Ditech lacked probable cause.[3]

Ditech's first argument fails. An action for malicious prosecution does not accrue until either the "appeal is decided, or the time for taking such an appeal has expired." *Pendarvis v. Helms*, No. 8:04-CV-2261-T-27TGW, 2009 WL 10643956, at *4 (M.D. Fla. Mar. 12, 2009) (citing *Cazzares v. Church of Scientology of Ca., Inc.*, 444 So. 2d 442, 447(Fla. 5th DCA 1983)). Here, Ditech's deadline to appeal the final judgment in Delia's favor expired on December 24, 2015—thirty days after judgment was entered for Delia. *See* Fla. R. App. P. 9.110. Therefore, at the latest, Delia's malicious prosecution claim accrued on December 25, 2015—well after the July 15, 2015 settlement agreement releasing all of Delia's then-existing claims.

However, Ditech's second argument is convincing. Delia has failed to show that Ditech lacked probable cause when it sought foreclosure. In an attempt to establish a lack of probable

---

[3] The use of the term "probable cause" is, admittedly, odd in the context of a civil action. But "absence of probable cause" is a required element of a malicious prosecution claim under Florida law. *Debrincat v. Fischer*, No. SC15-1477, 2017 WL 526508, at *2 (Fla. Feb. 9, 2017). In this context, probable cause is defined as, "A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Goldstein v. Sabella*, 88 So. 2d 910, 911 (Fla. 1956) (citation omitted). Under this definition, "one need not be certain of the outcome of a criminal or civil proceeding to have probable cause for instituting such an action." *Id.*

cause, Delia alleges that Ditech brought the action to trial without a note or mortgage. (Doc. 34 at 177.) But Ditech's failure to produce these documents is not surprising considering it was attempting to enforce a lost, destroyed, or stolen note. (Doc. 34-1 at 86–89.) Indeed, the trial court's judgment in Ditech's favor was only reversed because Ditech failed to show evidence that it provided a surety bond or other "adequate protection" as required by Florida Statute when pursing enforcement of a lost note. (*Id.* at 87.) Further, the fact that judgment was initially entered for Ditech is enough to defeat Delia's malicious prosecution claim. *Goldstein v. Sabella*, 88 So. 2d 910, 911–12 (Fla. 1956) ("In our opinion a trial in a court of competent jurisdiction, which results in a judgment of conviction, or verdict for plaintiff, is a sufficient legal determination of the existence of probable cause and there would appear to be no valid reason to have that question determined again in another action.").

Accordingly, the prior judgment entered for Ditech rebuts any claim that it lacked probable cause to pursue the foreclosure case as a matter of law, *id.*, and Count XIII will be dismissed with prejudice. *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1070.

## VII. Conclusion

It is, therefore,

**ORDERED** that Defendant's Motion to Dismiss (Doc. 37) is **GRANTED** in part and **DENIED** in part. Counts I, III, IV, and V are dismissed without prejudice. Count XIII is dismissed with prejudice. Counts II, VI, and VII remain. If Delia wishes to amend his complaint, he may do so on or before June 15, 2017.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 1, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party